*Court of Common Pleas, Dauphin County, August 7th,* 1865.

BROWN *v.* WAGNER.

When a lease, by which the tenant contracts to pay one-half of the taxes, is made or renewed after the enactment of a law imposing a new tax, but before its assessment, the tenant is bound to pay his share of this tax.

By THE COURT.—There is but little legal difficulty in the solution of the question presented in this case, when we come to examine facts and dates. The lease was made in October, 1862, for one year, the tenant contracting to pay one-half of the taxes assessed or to be assessed on the property. There being no other time mentioned, the lease commenced from the day of its date; was renewed in October, 1863, on the same terms, and this contest is concerning the tax for the year 1864, which would be levied late in the year 1863, or early in 1864, if done at the time of making the county assessments; but as this was a special tax levied for a particular purpose—the payment of bounties—it was doubtless imposed some time in the spring or summer of 1864. The case stated admits that it was during the year, though it does not furnish the date. The *words* of the contract clearly throw one-half of the tax on the tenant. He bound himself, in general terms, to pay one-half of the tax, which should be levied on the premises, without designating the character or kind, thus apparently taking the risk with the landlord as to the amount. But although such were the words of the lease as agreed, yet had this been a new tax, imposed for a purpose never before known to the law, very high in many townships, and extremely onerous in its character, often amounting to the full annual rental of the estate, I should have felt great hesitation in saying that it came within the intention of the contract, although covered by its words. But when this lease was renewed in October, 1863, and for some six months previous, there was a law of the commonwealth in full force authorizing the assessment of taxes for the payment of bounties to volunteer soldiers, and to repay money previously borrowed or advanced for that purpose. Full power is given by the 3d and 12th sections of the act of the 14th of April, 1863, to levy taxes for those purposes; and with this law before his eyes, it was the folly of the tenant to renew his lease in October, 1863, on the same terms as before. We must, therefore, presume that the tenant had such taxes in contemplation, as well as the ordinary county and township rates and levies. If it was the understanding of the parties that the lease, made in October, 1862, was to commence on the 1st of April, 1863, the ordinary time of commencing a lease in this State, then the renewal on April 1st, 1864, occurred after the passage of the act of that year, which went into effect on the 25th of March, 1864. This is more broad and gen-

eral in its terms than the former law, though each fully authorizes and contemplates taxes to be levied for the payment of bounties, etc. In any point of view the case is clear of legal difficulty; nor is even the hardship so great as has been supposed. The object of paying bounties was to avoid the draft; the tenant was quite as likely to be subject to it as the landlord. The former always resided in the township or county, and would not be relieved, in consequence of the township quota being filled. It is true that the act of Assembly contemplates a tax on *property*, and only to a very limited extent on the person; yet the tenant enjoys the benefit of the land, and agrees to pay the taxes as part of his rent.

Should the case of a lease be presented, where it was entered into for a series of years, commencing before the enactment of any of these bounty laws, it might admit of a different solution, and we could not consider this a precedent in such a case, but in the present we can have no difficulty for the reasons already given. We, therefore, render judgment in favor of the plaintiff on the case stated.

*Brown, for plaintiff.*

*Mumma, for defendant.*